Thank you, Your Honor. Good morning, Your Honor. Stephen Lubliner on behalf of Appellant James Wynn. May it please the Court, I hope to reserve two minutes for rebuttal. I want to start with the coercion challenge to the- Counsel, help me on something here. Yes, Your Honor. I read the briefs, and I read what the judge said in the record, and it was really out there. He must have lost his form book. Usually what you do is you just read all this stuff from the Ninth Circuit forms, and you don't get in trouble. And I couldn't figure out why he was doing it. And then I was struck that there was no objection to anything. And I was thinking, why wouldn't there be objection to anything? Well, one way to look at it is Olano. Is there an effect on him? I can't remember the exact verbal formula, but basically, does it create an injustice? Is there- And the second thing I looked at is, why wouldn't there be objection? Nobody could miss that this judge is deviating pretty far from the form book. And I was thinking, suppose I'm defending somebody, and I have no defense. I have nothing. Well, about my only chance of beating this is if the judge makes lots of mistakes so I can get it reversed. So I just quietly let all the mistakes happen. Why under Olano, failure to object, possibility of strategic purpose in not objecting, wouldn't we affirm? Well, we are under the plain error standard. And I suppose the arguments might obtain in any case where the defendant finds himself under the more burdensome plain error standard, then potentially the defendant is left with an ineffective assistance counsel claim. When I did criminal defense, I loved error. If I could leave it uncorrected without substantively hurting my client, that's what I'm thinking about. Well, I think the practical fly-on-the-wall answer to why defense counsel didn't object is because he had just gotten the heck beat out of him at closing argument, where the judge repeatedly admonished him for what the judge viewed as inappropriate arguments and arguments that weren't supported by the evidence and so on and so forth, and slammed the door on him and told him to sit down and be quiet. That's not an issue in this case. I'm not complaining about that. But I think if we want to go into trial counsel's mind, which is one reason why I think an ineffective assistance claim here. We're supposed to, aren't we, to look at whether it may have been a strategic judgment? Well, I don't have an ineffective assistance counsel argument here. I have an argument of. Wouldn't we do that under an Olano analysis too? I don't think we would. I think we look under the four-prong test of plain error that we have in Olano and Johnson. Is there error? Trial court error. Was it plain error? Were substantial rights affected? And would failing to notice the error reflect negatively on the justice system? Basically, the government concedes on page, I believe, 13 of its brief, that the last two prongs of the plain error test are satisfied in this case. That coercion of a jury verdict impacts substantial rights reflects negatively on the system. If you decline to notice such an error, I can talk further about that if the court wants. But there is this government concession. So I don't see a strategic. While I can say that there is potentially a strategic purpose in not objecting, assuming counsel was even paying attention, you know, this would be a 2255 kind of claim that we would more appropriately have this discussion in. And that's why I didn't bring a Strickland claim in this case, as I often do in other appeals where there's a waiver or forfeiture or so on. I just don't think the strategic purpose argument really factors into the plain error argument at all. Counsel, does your coercion argument rest on this being a de facto Allen charge? No, Your Honor. It does not. Procedurally, it couldn't be an Allen charge since it occurred prior to deliberations and not in the context of a deadlock. I know the government cited a number of Allen charge cases. I don't think if the government is arguing that jury verdicts can only be deemed coerced when you have a deadlock, I submit that that is not a viable meaning of the law. You didn't cite the Allen charge cases in your brief? Only for the broadest propositions. I cited the Jimenez case. Coercion of a jury verdict is reversible error. It violates due process and it's automatic. What's your strongest case for coercion, case authority, that is a non-Allen case? Oh, I think the Jenkins Supreme Court opinion is the strongest. Well, procedurally, it's just not an Allen case because it's not designed to break a deadlock. It's not designed to break a deadlock. It's designed to forestall a deadlock, and arguably, given the remarks on the weight of the defendant's case or lack thereof, to forestall an acquittal. That's why I'm asking you, what is your strongest case support for your coercion claim that is a non-Allen case? Well, just procedurally and the procedural posture of the case. And also, I would say the language in the Jenkins case is the closest to the language in this case. Now, again, that occurred in the context of a deadlock. But I submit, if you look at the language that was in Jenkins, which was from the – it's not in the Supreme Court case, but it's set out in the circuit court opinion where the court instructed the jury, all right, look, this is a simple case. You've heard everything you're ever going to hear. Go back out and get this. We don't want to do it again. The evidence isn't going to get any better. And if we had to retry that case, that wouldn't be very smart. So is your answer to my question that you don't have a non-Allen case that discusses coercion of the jury? I don't think I have a case that occurs at the start of jury deliberations where the court gives a coercive, preclusive, or in this case, a number of coercive, preclusive instructions. They go out and get this case done. This case can't be retried because the prosecution's witnesses would lose their memories and so on. Your Allen cases are all where the jury's been deliberating a while, and they say they're deadlocked. And then the judge, when the case is reversed, appears to be hammering the holdouts to go along with the majority. But in this case, as I understand it, that hadn't happened. It was part of the instructions before the jury went out. Yes, Your Honor. Do I have the facts right? Yes, Your Honor. Yes, Your Honor. This case can't be tried. It's an old case, which was true, although the jury didn't know that necessarily. Don't ask for readbacks. Don't ask questions. The defendant had no evidence. If he had anything good to say, he would have taken the stand, et cetera, et cetera, et cetera. All the ---- Counsel, can you meet the plein air standard if you don't have a case that supports your argument that a pre-deliberation instruction is coercive? Well, the ultimate test, as the Supreme Court established in Jenkins for coercion of a jury verdict, is totality of the circumstances. And I submit, as Judge Kleinfeld recognized, that the judge's comments are out there and the totality of the circumstances are quite plain, and they are not redeemed by the little cautionary, oh, but don't forget to do your duty, which is also the Quersia case, where the Supreme Court made it very clear that when you have comments that totally intrude on the jury's neutrality, they're not redeemed by these little, oh, but of course, you know, don't just listen to me. But the other problem you have with failing to object is, and the reason we apply a more stringent standard, or we give more deference to district court is, if trial counsel had gotten up and said, raised an objection, the court could have corrected at that point. They said, look, I didn't mean to say anything that, you know, beefed up the part of the deadlock, I suppose, you know, we'll accept it, but, you know, we expect you to do your job, and, you know, could have corrected the problem. And by failing to object, you leave the situation as it is. Now, I don't have to think this instruction is all that bad, if it's bad at all. I mean, he says we don't want a hung jury, which is true. We don't want a hung jury. At the same time, he does say, but, you know, you've got to reach a verdict consistent with your conscience. If you can meet it consistently with your conscience. What's wrong with that instruction? Well, I think it is, I think it's pretextual. I think it's just like the Quercia case in terms of the magnitude of the prejudicial things that the trial judge said. Pretextual or intertextual? Well, that's not. It does not cure, and if we were to analogize to prosecutorialism. It's not a question of curing. I'm saying what's wrong with the instructions. A cure suggests there was something wrong that now has to be cured. I'm asking what is wrong with the instruction? Where here is the error? Well, the precedents, I think, are clear that the trial court may not instruct the jury that they are obligated to return a verdict in this case. And if you read the instructions as a whole, including the part where he says you've got to sort of, you know, we don't want a hung jury in this case. You know, this is very difficult, you know, trying it. But you've got to come back with a verdict that's consistent with your conscience, and you've got to twice you've got to be able to say that this is your verdict. So if you read the whole instruction, where is the error? I think if you read that instruction, he's saying this is an old case. It can't be retried. The prosecution's witnesses will lose their be less accurate. Memories fade. All the things that are often said. And the jury is going to understand that the prosecution's case is going to be diminished. If you read the totality of the circumstances of the instruction, he's not just. At that point, it's not the totality of the circumstances because he doesn't stop there. He continues without catching his breath. He says, but only if you can do so in good conscience. And if every one of you can agree with the verdict and twice verify that that's your verdict. That's all within a single passage. He can't sort of stop with the part that you don't like and say, well, that's the totality of the circumstances. Because that's not the totality of the circumstances. I acknowledge that that's the totality of the circumstances. It's not. No, no, no. Everything that he said. I submit that as in Quersia, what he said after he said we've got to have a verdict in this case does not detract from everything that he said before, which is. Why doesn't it? Because he said we have to have a verdict in this case, which is improper. He said don't ask me questions. He's saying we have to have a verdict. That's not. What does he say? We've got to have a verdict. Before he says. Before then he reverses field. He reverses. What does he say? We have to have a verdict in this case. We don't want to have no verdict in this case. These events are old. They've happened. We don't want to have no verdict. We have to have a verdict. We don't want to have a no verdict. OK. Right. We don't want to have a no. What does it say? We have to have a verdict. Well, I submit that when the trial judge is sitting there talking to the jury, this is what we don't want. The message to the jury is you should deliver it. This is what we should do what you want. And that is all bolstered by everything that the trial court has said about other things. You don't have to ask me questions, all these intelligent questions. That's also structural error. You don't have to ask me readbacks. That's also structural error. The defendant, in case you didn't notice, didn't put on any evidence. The defendant, in case you noticed, sat on his hands. And we know that people who sit on their hands and don't take the stand don't have anything good to say anyway. So that's the totality of the circumstances. And that's what's telling the jury, go out, A, and return a verdict, which is freestanding reversible error under Jenkins and the other cases. And, B, go out and return a verdict for conviction because anything else is stupid. None of which was objective to. None of which. Was anything else stupid? Was the evidence so overwhelming that it really didn't matter what the judge's instructions were? Well, I mean, this is ‑‑ I don't want to say that it was so overwhelming. I would say that I have couched Mr. Wynne's claims in structural error terms because the law supports it, because I felt those were his best chances at relief. Structural error doctrine exists for a reason. It's narrowed structural error doctrine so much that I'm really looking for substantive harm. Well, I don't think there's any dispute that it's narrowed it so far that coercion of a jury verdict by a trial judge is any less structural than a biased judge or a deficient reasonable judge. Let's say we don't buy your Allen charge argument. Well, it's not an Allen. But we've got some of the other stuff that is of serious concern. I don't know if you get anywhere with structural error. Was the evidence so overwhelming that error mattered? Well, I think if I had had to bring ‑‑ I considered and rejected certain claims that had to meet a prejudice standard. I had a strong Griffin error claim there. I decided not to raise it. Well, did the guy have a defense? It looks like he was creating phony tax returns on a contingent fee basis where he takes part of the refund that nobody's entitled to on account of the phony tax returns. And it looks like there's no evidence on the defense side, no hope of beating this except judicial error. I'm trying to figure out, did he have some kind of case? Was there a possibility of acquittal if the judge had done everything according to the form bar? Well, in terms of what was actually put before the jury, the defendant didn't testify. He offered, you know, they cross‑examined the prosecution witnesses about this, that, and the other things. Was there some weakness? Again, I would submit that I couched Mr. Wynne's claims in structural error for a reason. And I would, again, defend the structural error principle very strongly. There was very good language in the U.S. Supreme Court's Ballenbach case. It is not to be supposed that Congress intended to substitute the belief of appellate judges and the guilt has been accused, however justifiably engendered by the dead record. You're getting back to general rhetoric, and I'm asking concretely about this case. And, of course, if it's structural error, then this case doesn't matter. But if it's not structural error, it's trial error, then a focus on this case does matter. And I want to know if there's any way, if the judge had done everything right out of the form book, that this defendant could have established a reasonable doubt. Well, I don't think he could have shown prejudice under classical prejudice analysis, which is why I've raised the claims that I raised. In a case like a Fourth Amendment case, to protect the defendant's constitutional rights, to deter inappropriate behavior, sometimes we have to reach results that serve higher values, even though they appear maybe potentially distasteful, given what we know in a more general way. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Christine S., United States. Could you help me with what bothers me most about what the judge said? It wasn't actually telling the jury that it's not going to get any better for another jury, and it would be nice if they would decide it. And the reason that doesn't bother me is they hadn't sent them back a note saying they were deadlocked. Nothing had happened yet. What really bothers me is this other statement by the judge. The defendant doesn't have any duty to speak. The idea that the truth can't hurt you is simply untrue. The truth, I'm not saying that as to him. I'm saying that the idea that it can't hurt is not true. It can hurt. If it really would do you a lot of good, you probably wouldn't be sitting there. That struck me as a very aggressive deprivation of the right not to be compelled to testify and the presumption of innocence. And I don't really understand the answer to it. Your Honor, my understanding of the purpose behind those remarks was to offer a rationale for the instruction that the jury could not draw any adverse inference from the defendant's failure to testify. I'm not exactly sure what that is. Show me the words that you think save it. Those words, Your Honor, come actually right afterward. If you look at the next paragraph, the Court says, so we really have to understand that it's an unrestricted right that you have to just sit there and see if the government has proof of the jury beyond a reasonable doubt. And that decision you do make at the time, it's a valuable right. And then, Your Honor ---- But he's just told them if you do just sit there, that's because you're guilty and the truth would hurt you. You know, Your Honor, I would quibble with that because the Court made clear that what the Court was saying was not as to that particular defendant. The Court was giving jury instructions. Jury instructions are the law. The Court was explaining the law as it applies in every criminal case. And, Your Honor, to get back to your last point, I would draw the Court further down the transcript to the next paragraph where the Court says, all right, a defendant in a criminal case does have the constitutional right not to testify, and no presumption of guilt or any other inference may be drawn from that. So, again, Your Honor, I would ---- I have read the statement that the Court has trouble with obviously numerous times. I'm still not sure what it says. But I would make two points. One is that we are dealing with a plain error standard here. And if it's incomprehensible, I would submit that that's not plain error. And, secondly, Your Honor, whatever the Court said in this statement that you have trouble with, the Court immediately made clear. So what you're saying is the first paragraph may be bad, but the second and third paragraph fix it enough so that it doesn't affect substantial rights. That's exactly right, Your Honor. And the other thing I would point out, Your Honor, is that the defense relies on the case Jenkins for the point that this statement that we don't want to have no verdict in this case is urging the jury to reach a dispositive verdict. Jenkins, in that case, all the Court there said is you have got to reach a verdict in this case. As Your Honor so pointed out, in this case, the Court admonished the jury numerous times that the jury could only reach a verdict if they did not abandon their sincerely held views. They had to maintain their views. They had to say the verdict and mean it. And the Court said that a number of times in the record, and under Jenkins, were required to evaluate the defendant's claim in its context and under the totality of the circumstances. Another thing I would point the Court to, something the Court has already noted, is the timing. The context that an Allen charge owes its coercive nature, the potential for cohesion, due to the fact that it's the message is sent to a minority set of jurors on that jury. Here, there was no set of minority jurors. There were no majority – there were no minority jurors. The case had not yet been given to the jury. I would urge the Court instead to liken this case to Marsh v. Cupp, where in that case, the Court upheld an instruction that is very similar to the one given here and that is very similar to the model ABA rule, which is basically each jury has a – each juror has a duty to deliberate with a view to reaching an agreement, but without doing violence to their individual judgment. And with respect to the defendant's argument that the statement was coercive in light of other instructions, particularly the instruction regarding the credibility of witnesses and the instruction regarding the defendant's failure to testify, I would argue that the instruction not to count witnesses had the opposite effect. It told the jury that they could not simply decide that witnesses were persuasive because of the number of them, that the jury had to actually evaluate the persuasiveness of the witnesses' testimony. With respect to the defendant's claim that the Court prohibited readbacks, again, I would point the Court to the record. I think it's clear that – This hasn't really been argued to the brief. Do you really feel like it wasn't adequately covered in your brief? I'm sorry, Your Honor? Do you feel it wasn't adequately covered in your brief? No, Your Honor. I mean, I'm sorry. I do feel it was adequately covered in my brief. I mean, it wasn't addressed in oral argument here. There's really no need for it. Unless the Court has any additional questions for me, I'll submit them. Thank you. Thank you. Mr. Luglino, would you like a minute? Yes. Yes, Your Honor. Just really one observation on the timing question. The totality of the circumstances – no, excuse me. The timing question, I don't think it is relevant that this instruction occurred at the start of deliberations as opposed to in the context of a deadlock. Realistically, jurors form opinions about the evidence as they listen to it, and then they're instructed on the law at the close of trial. And after they're instructed by the law, logic dictates that they form opinions about the likely guilt of the defendant that they take to the jury room with them, and those opinions might be inclining towards acquittal. Now, having formed those opinions, to then have the trial judge issue the instructions and talk to the jury in the manner that we complain of, I submit that that is no different in terms of the effect it is going to have on jurors and their opinions that might favor the defendant than if it's given in the middle of the trial when we know that the jurors have already expressed them. I don't think there's a meaningful difference between the trial court's actions. Thank you. Thank you, Your Honor. The case is signed. You will stand submitted. We'll next hear argument in Medina.
judges: Kozinski, Kleinfeld, Rawlinson